IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | CRIMINAL ACTION NO. |
| | : | 1:20-cr-00439-LMM-RGV-1 |
| v. | : | 1:20-cr-00439-LMM-RGV-2 |
| | : | |
| | : | |
| ADOLFO FEDERICO MENDOZA | : | |
| and ELIEZER MENDOZA | : | |
| MARTINEZ, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

This case comes before the Court on the Magistrate Judge's Report and

Recommendation, Dkt. No. [111], that the Court deny a motion to suppress

statements filed by Defendant Eliezer Mendoza Martinez ("E. Mendoza"), Dkt.

No. [72], and motions to suppress evidence filed by E. Mendoza and adopted by

Defendant Adolfo Federico Mendoza ("A. Mendoza"), Dkt. Nos. [73, 75, 79]. For

the reasons discussed below, the motions are **DENIED**.

I.     **LEGAL STANDARD**

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's

Report and Recommendation for clear error if no objections are filed. 28 U.S.C.

§ 636(b)(1). If a party files objections, the district court must review de novo any

part of the Magistrate Judge's disposition that is the subject of a proper objection.
Id.

## II.   BACKGROUND

### A.   Facts[1]

In August 2020, Homeland Security Investigations ("HSI") agents in
Atlanta were informed by their counterparts in Charlotte that approximately
50 kilograms of methamphetamine had been seized from a vehicle that had been
tracked to a business known as Mendoza Pallets, LLC ("Mendoza Pallets"),
located at 1185 Willingham Drive, and that they suspected that the location was
being used for drug distribution.  Dkt. No. [111] at 2.

HSI Atlanta agents began investigating the location, and on October 19,
2020, at approximately 10:47 a.m., agents who were conducting surveillance saw
an orange Chevrolet Camaro arrive at the location. Id. at 3. The driver exited the
Camaro and went inside the building through a door for Suite 1185. Id. A few
minutes later, the driver exited the warehouse carrying a large cardboard Home
Depot box, accompanied by another man. Id.; Dkt. No. [95] at 57. The driver
placed the box in the back seat of the Camaro and drove away from the
warehouse. Dkt. No. [111] at 3. The other man walked back inside Suite 1185. Id.

HSI agents contacted the Georgia State Patrol ("GSP") and requested their
assistance in conducting a traffic stop of the driver. Id. A GSP trooper

---

[1]     Unless otherwise noted, the facts recited here are from portions of
the R&R to which Defendants have not objected.

subsequently stopped the Camaro and found in the rear passenger seat the cardboard box that the driver had carried out of Suite 1185. Id.  When the box was opened, it was found to contain approximately 10 kilograms of methamphetamine. Id.  The driver was arrested and transported to the Brookhaven Police Department, where he waived his Miranda[2] rights and was interviewed. Id. at 3-4.

The driver, identified as Ricardo Jimenez Gonzales (hereinafter, "Jimenez"), told investigating agents that the location from which he obtained the 10 kilograms of methamphetamine was a business known as Mendoza Pallets. Id. at 2, 4. Jimenez was shown a photograph of the door through which he entered the premises, stenciled with the number 1185, and he confirmed that he obtained the narcotics inside that suite. Id. at 4. He said that inside Mendoza Pallets he had picked up the box containing methamphetamine from a person he knew as "Primo"; that he was supposed to deliver the box to a third party whose name, as saved in his phone contacts, was "Diente"; and that "Diente" was located inside the apartment complex where the driver had been arrested. Id.

At approximately 12:20 to 12:30 p.m., after learning that Jimenez admitted obtaining the methamphetamine from Mendoza Pallets, HSI Special Agent Roy C. Rutherford ("Agent Rutherford") began working on an application for a federal search warrant for the premises. Id. In his affidavit supporting the application for

---

[2]     See Miranda v. Arizona, 384 U.S. 436 (1966).

the search warrant, Agent Rutherford included information about the Charlotte

HSI agents' seizure of the 50 kilograms of methamphetamine in August 2020;

the surveillance conducted at 1185 Willingham Drive earlier that morning; the

seizure of methamphetamine from the Camaro; and the statements the driver

made about having obtained the methamphetamine from Mendoza Pallets. Id.

at 4-5. Agent Rutherford finalized his affidavit around 3:00 p.m. and believed

that the application for a search warrant would soon be sent to a United States

Magistrate Judge for review. Id. at 5.

A federal search warrant authorizing HSI agents to search the premises

located at 1185 Willingham Drive was signed at 4:21 p.m. Id. at 9. Before that,

however, the agents had become concerned that there was an increasing

likelihood that evidence would be destroyed or removed, and at approximately

3:24 p.m., they entered the premises of Mendoza Pallets to conduct a sweep and

secure the location. Id. at 7.

The premises included four office suites—1185, 1189, 1193, and 1195—and a

shared 25,000 square foot warehouse space. Id. Each office suite was accessible

through separate doors, both from the street at the front of the building and from

inside the warehouse. Id. The office suites were not connected to one another. Id.

The warehouse space was visible to the public and accessible through open truck

bays at the back of premises. Id.

Agents entered the building simultaneously through the front and back of

the building; encountered approximately eight or nine warehouse employees;

4

detained them by placing them in handcuffs for officer safety; and swept the entire premises looking for other individuals. Id. Agents entered the warehouse space through open, unlocked truck bays at the back of the building and immediately saw and detained E. Mendoza, the man who agents had seen with Jimenez. Id. at 3, 7-8. Around the time E. Mendoza was detained, agents also located a cellular telephone inside a cupholder on a forklift that he had been operating when agents apprehended him. Id. at 8.

As the agents conducting the sweep moved from the back of the warehouse to the front, they encountered unlocked doors leading from the warehouse into each of the front offices, including Suites 1185 and 1189. Id. While looking for people inside of Suite 1185, agents discovered a large amount of a white crystal substance, later determined to be methamphetamine, readily visible inside a closet within that suite. Id. At that time, the narcotics were not seized, moved, taken, or physically altered from their original location in the closet but instead the space was secured to ensure that no evidence was moved or destroyed. Id.

While some agents and officers entered through the back of the building, another group of agents, including Agent Rutherford, entered through the front door to Suite 1189. Id. A secretary for Mendoza Pallets, Maria Flores ("Flores"), let Agent Rutherford into the front office space inside Suite 1189 and voluntarily answered questions while the other agents were sweeping the rest of the premises. Id. Flores told Agent Rutherford that A. Mendoza controlled the pallet business but was not physically present at the facility for day-to-day operations.

5

Id. at 8-9. Flores also told agents that A. Mendoza came to the facility only on Fridays for payroll, or sometimes on Mondays, and that since August 2020, A. Mendoza had kept an office inside Suite 1189, where he met with Jimenez and others with the door closed. Id. at 9. Flores further told agents that the only person who had access to Suite 1185 was E. Mendoza, who was the supervisor of the warehouse. Id.

After the search warrant was issued, agents conducted a search of each of the rooms within Suites 1189 and 1185, among other authorized spaces. Id. In Suite 1189, agents located and seized a cellular telephone on a couch inside a room that Flores identified as A. Mendoza's office. Id. Inside a closet in Suite 1185, agents seized the methamphetamine that was initially observed during the sweep. Id. at 9-10.

### B.   PROCEDURAL HISTORY

The indictment charges A. Mendoza and E. Mendoza (hereinafter, "Defendants") with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, (Count One), and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two).[3] Dkt. No. [33] at 1-2. E. Mendoza filed motions to suppress all evidence recovered by law enforcement on October 19, 2020, during the search of 1185 Willingham Drive, Dkt. No. [73]; Dkt. No. [79] (perfected motion), and a motion

---

[3]      Jimenez was also charged in the indictment. Dkt. No. [33]. He entered a guilty plea to Count One of the indictment on August 18, 2021, Dkt. No. [100], and was sentenced on February 11, 2022, Dkt. No. [122].

to suppress post-arrest statements he made to officers or federal agents, as "fruit of the poisonous tree," Dkt. No. [72]. A. Mendoza adopted E. Mendoza's motion to suppress evidence. Dkt. No. [75]. The Magistrate Judge held an evidentiary hearing on the motions on May 27, 2021. Dkt. Nos. [84, 95]. The parties then filed post-hearing briefs. Dkt. Nos. [97, 99, 105, 107, 109, 110].

On November 19, 2021, the Magistrate Judge entered a Report and Recommendation ("R&R") in which he recommended denying the motions. Dkt. No. [111]. With regard to the motions to suppress evidence, the Magistrate Judge found that A. Mendoza established that he had standing to contest the search but that E. Mendoza did not, id. at 16-20, and that exigent circumstances made it reasonable for the agents to have conducted the search prior to receiving the warrant, id. at 24-27. The Magistrate Judge additionally found that even if the initial warrantless entry and sweep of the premises were not justified by exigent circumstances, the evidence seized should not be suppressed because it would have been discovered through an independent source: through the execution of a lawfully issued search warrant. Id. at 27-30. As to the motion to suppress statements, the Magistrate Judge found based on his rulings on the motions to suppress evidence that there was no "poisonous tree" that could have tainted E. Mendoza's statements, id. at 32-34; that even if the search had violated E. Mendoza's constitutional rights, his statements were not tainted by the search, id. at 34-35; and that E. Mendoza knowingly, intelligently, and voluntarily waived his rights, id. at 31 n.10.

Pursuant to 28 U.S.C. § 636(b)(1), Defendants filed objections to the R&R, Dkt. Nos. [113, 114], and the Government filed a reply brief, Dkt. No. [116]. After due consideration, the Court enters the following Order.

### III.   DISCUSSION

Both defendants contend that the Magistrate Judge did not properly consider the evidence when he determined that exigent circumstances justified the warrantless search and that the Magistrate Judge failed to consider evidence of law-enforcement's bad faith when he found that the independent-source doctrine applied. Dkt. No. [113] at 2-9; Dkt No. [114] at 4-8. E. Mendoza additionally argues that the Magistrate Judge erred in finding that he did not have standing to challenge the search; states that he objects to the Magistrate Judge's finding that agents already had probable cause to arrest him prior to the warrantless search; and contends that his post-arrest statements should be suppressed because the arrest took place during the warrantless search and thus were not a product of his free will. Dkt. No. [114] at 2, 8-11.

### A.   Motion to Suppress Evidence from the Search of 1185 Willingham Drive

As noted by the Magistrate Judge, a warrantless search is presumptively unreasonable under the Fourth Amendment. Welsh v. Wisconsin, 466 U.S. 740, 748-49 (1984); Dow Chem. Co. v. United States, 476 U.S. 227, 245 (1986) (Powell, J., concurring); Payton v. New York, 445 U.S. 573, 586 (1980). However, "the United States Supreme Court has crafted a few carefully drawn exceptions to the warrant requirement to cover situations where 'the public interest requires

some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search.' " United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002) (alteration adopted). Thus, to defeat a motion to suppress based on evidence garnered through a warrantless search and seizure, "the Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment." United States v. Freire, 710 F.2d 1515, 1518-19 (11th Cir. 1983); United States v. Lisbon, 835 F. Supp. 2d 1329, 1361 (N.D. Ga. 2011).

Exigent circumstances constitute one such exception to the warrant requirement. Lange v. California, 141 S. Ct. 2011, 2017 (2021). Exigent circumstances exist when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983). Recognized situations in which exigent circumstances exist include "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir. 1983). However, while "[c]ourts have catalogued several situations in which exigent circumstances exist, [] it is clear that the exception must be applied carefully to each factual scenario." Id.; accord Lange, 141 S. Ct. at 2018 (explaining that application of the exception depends on whether the totality of the circumstances show that the officer in question faced a "now or

never situation"). "[T]he critical time for determining whether exigency exists is the moment of the warrantless entry by the officers onto the premises of the defendant." United States v. Morgan, 743 F.2d 1158, 1162 (6th Cir. 1984) (internal quotation marks omitted). "Circumstances are not normally considered exigent where the suspects are unaware of police surveillance." United States v. Santa, 236 F.3d 662, 669-70 (11th Cir. 2000) (internal quotation marks omitted; alteration adopted).

The Court has conducted a de novo review of all of the evidence relied upon by the Magistrate Judge and subsequently proffered by Defendants. It has also considered Defendants' attacks on Agent Rutherford's credibility and Defendants' allegations that the agents acted in bad faith by failing to detail the warrantless entry in their initial incident reports. However, after careful review, the Court finds that the evidence is materially credible and consistent and, taken as a whole, indicates that it appeared very likely that law-enforcement activity had been detected by the time of the warrantless entry, that there was a high risk that evidence would be removed, tampered with, or destroyed, and thus that exigent circumstances rendered the warrantless entry reasonable.

First, it was obvious that the source of the methamphetamine and its intended recipient were aware that Jimenez had disappeared and the circumstances Jimenez's arrest were such that they may have already realized he was in custody. It was around 10:50 a.m. when the agents conducting surveillance at Mendoza Pallets saw Jimenez carry the Home Depot box to the

10

Camaro, Dkt. No. [95] at 57, and Jimenez was apprehended at 11:30 a.m., Dkt.

No. [95] at 59; Dkt. No. [109-2] at 1. While in custody after his arrest, Jimenez

reported that "Primo" at Mendoza Pallets was the source of the

methamphetamine and that the parking lot where he was apprehended was at the

apartment complex where he was supposed to have delivered the

methamphetamine to "Diente." Dkt. No. [95] at 60, 67. During that time, agents

observed that Jimenez was receiving numerous calls to his cell phone from

"Primo" and "Diente." Dkt. No. [88-1] at 14; Dkt. No. [95] at 64, 67, 122, 124-25,

136-37, 143-44; Dkt. No. [97-8] at 4-6; Dkt. No. [109-14] at 3. Agents also saw a

text from "Diente" referring to the delivery address as "[w]here 10 (kilos of meth)

were going." Dkt. No. [97-8] at 4. At 12:45 p.m., agents determined that

Jimenez's Nissan pickup truck was parked in front of the Mendoza Pallets facility.

Dkt. No. [97-8] at 3. Under these circumstances, even if "Diente" had not actually

seen Jimenez's arrest at the delivery address, as a matter of common sense, it was

only a matter of time before "Primo" or "Diente" would presume that Jimenez

had been arrested.

Second, the detection of law-enforcement activity was likely because of the

layout of the Mendoza Pallets facility. It was difficult for the agents to conduct

their surveillance in a covert manner because there was no public space near the

facility where they could blend in and watch the activity around the warehouse—

instead, they had to park inside the parking lot, where it was likely they could be

seen watching the premises. Dkt. No. [95] at 65-66, 135; Dkt. No. [88-1] at 1-2,

17. At 12:22 p.m., Georgia State Patrol arrived in the area, which supported the law-enforcement effort, in case something or someone came out and needed to be stopped, but their presence also increased the likelihood of detection. Dkt. No. [97-8] at 2; see also Dkt. No. [113] at 6.

Third, the layout of the Mendoza Pallets facility was such that it would be difficult to control if there was an attempt to remove evidence from the premises, as the warehouse space behind office suites opened up to a large parking lot shared by other businesses in the warehouse strip. Dkt. No. [95] at 69-70, 78; Dkt. No. [88-1] at 1-2.

Fourth, activity in and around the Mendoza Pallets parking lots suggested that law enforcement had been or would soon be detected and that evidence was or would soon be leaving the facility. At 12:07 p.m., agents saw a red Ford Explorer and an older-model Ford F-150 at the facility. Dkt. No. [97-8] at 2. At 12:18 p.m., both vehicles left, although with no visible boxes. Dkt. No. [97-8] at 2. At 12:32 p.m., a white Toyota Solara arrived; at 12:34 p.m., a black Chevrolet Suburban arrived; and at 12:54 p.m., a white Toyota 4-Runner arrived. Dkt. No. [97-8] at 3. About an hour later, at about 2:03 p.m., agents saw multiple Home Depot boxes inside the bay doors of the Mendoza Pallets warehouse and observed a woman take Home Depot boxes out to the far end of the parking lot behind the warehouse. Dkt. No. [97-8] at 6. At 2:12 p.m., a gray Ford F-150 pulled up to the front of Mendoza Pallets, and agents saw a Hispanic male enter Suite 1185, where Jimenez had picked up the methamphetamine. Dkt. No. [97-8]

at 6; Dkt. No. [95] at 68. At 2:15 p.m., E. Mendoza, who agents believed was "Primo," walked up to the F-150. Dkt. No. [97-8] at 7. At 2:22 p.m., the driver of the F-150 left, albeit apparently with empty hands, and at 2:33 p.m., E. Mendoza was seen in the back of Mendoza Pallets, standing near a loading dock. Dkt. No. [95] at 68, 73, 147-48; Dkt. No. [97-8] at 7. A white Jeep arrived at 2:36 p.m. and departed shortly thereafter. Dkt. No. [95] at 99-101, 125-26; Dkt. No. [97-8] at 7.

Finally, each time a marked unit stopped someone who had left the premises to determine whether they were carrying contraband, the risk that the surveilling agents would be discovered increased. Dkt. No. [95] at 68-69, 137-38. After the white Jeep left Mendoza Pallets, the Georgia State Patrol stopped the vehicle at 2:59 p.m., and finding no contraband, released the driver. Dkt. No. [97-8] at 7; Dkt. No. [95] at 100-01. This stop made the coordinated law-enforcement effot even more apparent.

Given the totality of the circumstances—Primo and Diente's multiple attempts to contact the detained Jimenez, the continued presence of Jimenez's car in the Mendoza Pallets parking lot, the inability of the officers and agents to physically conceal their surveillance, the difficulty of controlling the area around the Mendoza Pallets facility, the level of activity in and around the facility,[4] the

---

[4]   A. Mendoza asserts that all but one vehicle that arrived at the premises had left by the time the warrantless entry occurred. Dkt. No. [113] at 5, 6. The Court finds nothing in the cited evidence to support this. See id. (generally citing Dkt. No. [109-11]). The Court therefore finds little reason to doubt Agent

presence of known suspect "Primo" at the facility, and the likelihood that the traffic stops had exposed coordinated law-enforcement efforts—the Court finds it reasonable that agents would find the period of time soon after the Jeep stop to be a "now or never" moment requiring immediate warrantless entry to secure the premises. For these reasons, the undersigned concludes that exigent circumstances supported the warrantless entry and that the motion to suppress is due to be denied.

### B.      Motion to Suppress Statements

E. Mendoza's motion to suppress statements is predicated on the assumption that the search that led to his arrest and subsequent statements was conducted in violation of the Fourth Amendment and that the procurement of his statements therefore was also unlawful. Dkt. No. [114] at 8-11. As set forth above, the Court finds that exigent circumstances created an exception to the warrant requirement and that the search and seizure therefore did not violate the Fourth Amendment. See supra Part III.A. As a result, E. Mendoza's motion to suppress statements is also without merit.

### IV.      CONCLUSION

In light of the foregoing, Defendants' objections, Dkt. Nos. [113, 114] are **OVERRULED**, and the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, Dkt. No. [111], as the opinion of this Court: the Motions to

---

Rutherford's testimony that the Georgia State Patrol had indicated to the agents that it did not have sufficient coverage to conduct traffic stops of all vehicles departing from the facility. Dkt. No. [95] at 63-64, 122, 138.

Suppress Evidence, as perfected and adopted, Dkt. Nos. [73, 75, 79], and Motion to Suppress Statements, Dkt. No. [72], are **DENIED**.

The trial in this action is hereby set to begin on **Friday, May 20, 2022 at 9:30 A.M.** in Courtroom 2107, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. The pretrial conference will be held on **Monday, April 25, 2022 at 2:00 P.M**. in Courtroom 2107. By noon on Monday, April 11, 2022, the parties are to file the following: motions *in limine* and proposed *voir dire* questions. By noon on Monday, April 11, 2022, the Government must file a brief summary of the indictment that the parties can rely on for *voir dire.* By noon on Monday, April 18, 2022, the parties are to file responses to motions *in limine* and any objections and to those items listed above.

Excludable time is allowed through May 20, 2022, pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and the Defendant in a speedy trial and are consistent with both the best interest of the public and individual justice in this matter.

16

**IT IS SO ORDERED** this 25th day of February, 2022.

**Leigh Martin May**
**United States District Judge**